United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| LANSMONT CORPORATION,<br><br>    Plaintiff(s),<br>v.<br><br>SPX CORPORATION, et. al.,<br><br>    Defendant(s).<br>_____/ | NO. 5:10-cv-05860 EJD (HRL)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS; DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY ACTION**<br><br>[Docket Item Nos. 6, 8, 16, 18] |

Plaintiff Lansmont Corporation ("Lansmont") brings the instant action for breach of contract and related claims against Defendants SPX Corporation ("SPX"), Spectris, PLC, Brüel & Kjaer, and HBM, Inc. (collectively, "Defendants"). In separate motions, SPX moves to dismiss the complaint and requests an order compelling arbitration and staying the case to the extent any of Lansmont's claims survive. Both matters are combined for the purposes of this Order. After reviewing the complaint as well as the moving, responding and reply papers, the Court found these matters suitable for decision without oral argument pursuant to Civil Local Rule 7-1(b). As such, the hearing scheduled for June 17, 2011, was vacated and the motions submitted. See Docket Item No. 47. For the reasons set forth below, SPX's motion to dismiss will be granted in part and denied in part. The

1

Case No. 5:10-cv-05860 EJD (HRL)
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS; DENYING
DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY ACTION   (EJDLC1)

motion to compel arbitration and stay the case will be denied.[1]

## I. FACTUAL AND PROCEDURAL BACKGROUND

In the late 1990's, Lansmont and non-party Dactron, Inc. ("Dactron") partnered to develop new, state-of-the-art vibration controller technology and accompanying software (the "technology"). Complaint at ¶ 3. Lansmont eventually purchased 80% of Dactron and invested the capital necessary to finalize development of the technology. Id.

In late 2001, Dactron was sold to United Dominion Industries, Inc. ("UDI"). Id. at ¶ 4. As a condition precedent to this sale, Lansmont agreed to transfer not only Dactron's assets and its royalty-free license to UDI, but to also transfer the technology. Id. In return, UDI promised to grant-back to Lansmont a license to the technology, as well as other business guarantees. Id. The terms of this agreement were set forth in an Assignment and Grant-Back License Agreement ("AGBLA") such that : (1) UDI and its successors would supply Lansmont with vibration controller hardware and software at a reduced price, (2) Lansmont would have the sole and exclusive distributorship in the electro-dynamic vibration controller market, (3) Lansmont could inspect the records of UDI and its successors upon 48 hours notice to ensure compliance with the contract, and (4) UDI and its successors would provide Lansmont with all the relevant technological documentation necessary to maintain a current interface. Id.

Soon after signing the AGBLA, SPX acquired UDI. Id. at ¶ 5. As UDI's successor, SPX accepted the terms and conditions of the AGBLA and took advantage of its benefits. Id. at ¶¶ 18, 44. SPX operated the Dactron business through its subsidiary, Ling Dynamic Systems ("LDS"). Id. at ¶¶ 5, 44.

On or about January 2, 2002, Lansmont agreed to enter into an amendment of the AGBLA with LDS (as SPX's representative) for a three-year term. Id. at ¶ 46. The amendment granted LDS

---

[1] This disposition is not designated for publication in the official reports.

2

Case No. 5:10-cv-05860 EJD (HRL)
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS; DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY ACTION (EJDLC1)

the right to sell vibration control platforms subject to the AGBLA directly to end users and certain original equipment manufacturers. Id. at ¶ 47. Essentially, the amendment provided a carve-out to the market exclusivity clause in the AGBLA. Id. In exchange, Lansmont was to receive a substantial royalty fee and an increased discount on its orders from LDS. Id. To ensure compliance with the terms of the amendment, LDS was also required to provide quarterly sales and revenue updates to Lansmont. Id.

Lansmont and SPX continued to operate under the terms of the AGBLA as amended until they expired in 2005. Id. at ¶ 45. Thereafter, the parties returned to operating under the original terms of the AGBLA. Id.

In May, 2008, Lansmont learned that SPX had plans to sell LDS, including all of the previously-acquired Dactron assets, which included the technology. Id. at ¶ 50. Lansmont repeatedly contacted SPX and LDS in an attempt to learn more about the potential sale of LDS, and with it a potential assignment of the rights and obligations accompanying the AGBLA. Id. SPX and LDS were unresponsive to these inquiries. Id.

SPX finally responded in December, 2008, by notifying Lansmont that it had sold LDS to Defendant Brüel & Kjaer ("B&K"), a subsidiary of Defendant Spectris, PLC ("Spectris").[2] Id. at ¶ 51. After repeated requests for an accounting or audit as provided for in the AGBLA, LDS - which by then was owned by Spectris - admitted it owed approximately $80,000 to Lansmont under the AGBLA for activities that occurred prior to the sale to Spectris. Id. at ¶ 52. SPX informed Lansmont that LDS would pay the amount directly to Lansmont, but disclaimed any further liability under the AGBLA. Id. SPX claimed that any liability was transferred to B&K as part of the LDS sale. Id.

---

[2] According to the complaint, Defendant HBM, Inc. is another subsidiary of Spectris which holds documents from LDS necessary to complete the accounting requested by Lansmont. Complaint at ¶ 21.

3

Case No. 5:10-cv-05860 EJD (HRL)
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS; DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY ACTION  (EJDLC1)

On February 12, 2009, LDS supplied Lansmont with a payment of $79,554.40 and limited financial information. Id. at 53. According to Lansmont, the information was incomplete and underestimated the actual amount due to Lansmont. Id.

Lansmont again demanded either an audit of LDS's books or a full accounting to determine the basis for LDS' determination that it owed only $80,000 to Lansmont. Id. In particular, Lansmont was concerned that SPX and LDS were liable for: (1) overcharges from hardware and software purchased by Lansmont after January 24, 2005, (2) underpayment of royalties to Lansmont during the 2005 calendar year under the amendment, and (3) sales made after the expiration of the amendment in violation of Lansmont's exclusive market under the contract. Id.

On April 27, 2009, LDS' CFO, operating under the auspices of B&K, provided Lansmont with a limited amount of additional financial and sales data. Id. at ¶ 54. From this limited disclosure and its own independent investigation, Lansmont determined that LDS owed it more than $328,000. Id. Of this amount, Lansmont claims that approximately $287,000 was incurred before Spectris purchased LDS from SPX. Id. After learning there was an estimated $41,000 in overcharges post-dating Spectris' acquisition of LDS, B&K promptly paid Lansmont $41,000. Id. at ¶ 56.

Having failed to settle Lansmont's claims informally, SPX now contends all liability and obligations under the AGBLA were transferred along with the Dactron assets when LDS was sold to Spectris. Id. at ¶ 59.

Lansmont filed this action on December 23, 2010, for breach of contract, breach of the covenant of good faith and fair dealing, and unjust enrichment. SPX now moves to dismiss the complaint and seeks to compel arbitration of any surviving claims.

//

//

4

## II. THE MOTION TO DISMISS

### A. Legal Standard

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the...claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations omitted). A complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008).

When deciding whether to grant a motion to dismiss, the court generally "may not consider any material beyond the pleadings." Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990). The court must accept as true all "well-pleaded factual allegations." Ashcroft v. Iqbal, --- U.S. ----, 129 S.Ct. 1937, 1950 (2009). The court must also construe the alleged facts in the light most favorable to the plaintiff. Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1988). "[M]aterial which is properly submitted as part of the complaint may be considered." Twombly, 550 U.S. at 555. But "courts are not bound to accept as true a legal conclusion couched as a factual allegation." Id.

If dismissal is granted, leave to amend should be freely allowed "unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv–Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986); see Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000); Fed. R. Civ. P. 15(a). Where amendment to the complaint would be futile, the court may order dismissal with prejudice. Dumas v. Kipp, 90 F.3d 386, 393 (9th Cir. 1996).

//

5

### B. Claim I: Breach of Contract

Lansmont's first claim alleges that Defendants breached the terms of the AGBLA by using and profiting from the technology while failing to observe their contractual obligations. Specifically, Lansmont alleges that SPX, B&K, Spectris and HBM have refused Lansmont's requests to inspect their records in accordance with Section 17 of the AGBLA, and have each informed Lansmont of their intent to cease abiding by the remaining terms of the agreement. SPX argues the breach of contract claim must be dismissed to the extent its seeks specific performance because SPX, having divested itself of any interest in the technology when it sold LDS to Spectris in 2008, has no interest in the AGBLA and no ability to perform under its terms. From this, SPX concludes the claim for breach of contract is not "plausible on its face." Id. at 570; see also Iqbal, 129 S.Ct. at 1949-50.

It is well-settled, and here undisputed, that California law applies to determine the parties' substantive rights under the AGBLA. See Hogan v. Wal-Mart Stores, Inc., 167 F.3d 781, 783 (2nd Cir. 1999) (explaining that state law governs the determination of substantive rights when federal jurisdiction is based on diversity of citizenship). In California, "[a]n agreement to perform an act which the party has not power lawfully to perform when required to do so" cannot be specifically enforced. Cal. Civ. Code § 3390. The inability must exist when performance is required by the court rather than at the time the contract is made. See Stevens Group Fund IV v. Sobrato Dev. Co., 1 Cal. App. 4th 886, 894 (1991). Also, inability to perform must be complete. See Milkes v. Smith, 91 Cal. App. 2d 79, 81-82; see also Stevens Group, 1 Cal. App. 4th at 895. If performance is at all possible, the court may order partial performance. Id.

Construing the facts in the light most favorable to Lansmont, the Court finds them sufficient to support the relief challenged by SPX. Lansmont alleges SPX acquired the Dactron assets and operated the technology through its subsidiary, LDS, from 2001 to 2008, and received the financial benefits of such arrangement. Complaint at ¶¶ 5, 24, 61. Lansmont further alleges that SPX was

6

able to determine it owed $80,000 to Lansmont even after it sold LDS to Spectris. Id. at ¶ 52. A reasonable inference from these allegations is that SPX retains some type of "relevant books and records" appropriate for inspection pursuant to paragraph 17.2 of the AGBLA, even if SPX cannot completely satisfy Lansmont's demand. See Barker v. Riverside County Office of Ed., 584 F.3d 821, 824 (9th Cir. 2009). While it is certainly possible to infer, as SPX does, that all responsive information was retained by LDS and is now in the exclusive possession of Spectris, B&K or HBM, doing so would be contrary to this court's mandate when confronted with a request for dismissal. See Love, 915 F.2d at 1245. Thus, Lansmont has satisfied its burden to plead a "plausible" claim for specific performance against SPX. See Twombly, 550 U.S. at 570. That is all that is required at this stage in the case. SPX's request to dismiss the first count for breach of contract is denied.

**C.      Claim II: Breach of the Implied Covenant of Good Faith and Fair Dealing**

SPX seeks to dismiss Lansmont's claim for breach of the implied covenant of good faith and fair dealing as superfluous to the claim for breach of contract.

"Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." Careau & Co. v. Sec. Pacific Bus. Credit, Inc., 222 Cal. App. 3d 1371 (1992) (quoting Restatement (Second) of Contracts § 205 (1981)). The implied covenant of good faith is read into contracts in order to protect the express promises made therein, not to promote a general public policy interest with no direct relation to the contract's purpose. Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc., 2 Cal. 4th 342, 371 (1992). If the allegations for breach of the implied covenant "do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated." Careau, 222 Cal. App. 3d at 1395 (1990).

Here, Lansmont alleges:

> Defendants have breached their covenant of good faith and fair dealing

7

> by refusing to comply with the terms of the AGBLA while profiting from the technology and assets obtained in connection therewith . . . . Defendants have refused to comply with the AGBLA and/or have unfairly interfered with Lansmont's right to receiving benefits under the AGBLA . . . . By failing to act in a good faith attempt to comply with the AGBLA, delaying, submitting incomplete information, overcharging, and violating Lansmont's exclusive distribution rights, Defendants have violated the covenant of good faith and fair dealing . . . . Complaint at ¶¶ 80, 83, 85.

Reading the claim as a whole, Lansmont's allegations for breach of implied covenants are identical to those alleged for breach of contract. Although Lansmont added terms to this claim, the central act at issue is a failure to observe obligations imposed by the AGBLA. Id. at ¶ 80. The allegations of "delaying, submitting incomplete information, overcharging, and violating Lansmont's exclusive distrbution rights" are merely specified examples of the ways SPX purportedly violated express contract terms. Since Lansmont's breach of implied covenants claim is in essence the same as their breach of contract claim, the court dismisses this claim as superfluous. SPX's motion is therefore granted with leave to amend.

### D.     Claim III: Unjust Enrichment

In an argument similar to that addressed above, SPX contends Lansmont's unjust enrichment claim must be dismissed because it is superfluous to the breach of contract claim.[3] The court agrees.

The elements of unjust enrichment are: (1) receipt of a benefit; and (2) the unjust retention of the benefit at the expense of another. Peterson v. Cellco P'ship, 164 Cal. App. 4th 1583, 1593 (2008). Unjust enrichment is an equitable claim which sounds in implied or quasi-contract. See Paracor Fin., Inc. v. Gen. Electric Capital Corp., 96 F.3d 1151, 1167. In California, it is well settled that "'[t]here cannot be a valid, express contract and an implied contract, each embracing the same

---

[3] SPX makes other arguments in support of dismissal, namely that the unjust enrichment claim must be dismissed when there is an adequate remedy at law, and that unjust enrichment is a remedy and not a independent claim for relief. These arguments are not addressed, however, since the court's determination of the claim as superfluous is dispositive.

8

Case No. 5:10-cv-05860 EJD (HRL)
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS; DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY ACTION  (EJDLC1)

subject matter, existing at the same time.'" Berkla v. Corel Corp., 302 F.3d 909, 918 (9th Cir. 2002) (quoting Wal-Noon Corp. v. Hill, 45 Cal. App. 3d 605, 613). "Although Rule 8 of the Federal Rules of Civil Procedure allows a party to state multiple, even inconsistent claims, the rule does not allow a plaintiff invoking state law to assert an unjust enrichment claim while also alleging an express contract." In re Facebook Privacy Litig., No. 5-10-cv-02389 JW, 2011 U.S. Dist. LEXIS 60604, 2011 WL 2039995 (N.D. Cal. May 12, 2011) (citing Gerlinger v. Amazon.com, Inc., 311 F. Supp. 2d 838, 856 (N.D. Cal. 2004)).

Here, Lansmont alleges the AGBLA is a valid contract, enforceable against SPX as UDI's successor-in-interest. Complaint at ¶¶ 62, 66, 68. Lansmont further alleges SPX initially complied with the AGBLA after acquiring UDI and has previously admitted liability under its terms. Id. at ¶¶ 67, 68. Because Lansmont contends an express contract exists - in this case, the AGBLA - it cannot also assert an unjust enrichment claim which is nothing more than breach of contract with a different title. See Berkla, 302 F.3d at 918. Indeed, Lansmont incorporates all prior allegations into the unjust enrichment claim, including those which allege the existence of a contract between itself and SPX. Complaint at ¶ 86. This is itself problematic when recovery based on unjust enrichment assumes no express contract exists. Moreover, the "unjust" conduct alleged by Lansmont is the same conduct underlying its breach of contract claim.[4] This claim is superfluous by definition. Accordingly, the motion to dismiss count three is granted with leave to amend.

### III. THE MOTION TO COMPEL ARBITRATION AND STAY ACTION

#### A. Legal Standard

"A party to a valid arbitration agreement may 'petition any United States district court for an

---

[4] The allegations are themselves telling. Under its breach of contract claim, Lansmont alleges the "Defendants have breached the terms of the AGBLA, making use of and profiting from the technology tendered by Lansmont in connection with the AGBLA while failing to comply with the terms of the AGBLA." Complaint at ¶ 73. For unjust enrichment, Lansmont makes the exact same allegation: "Defendants have profited from the technology tendered by Lansmont in connection with the AGBLA while failing to comply with the terms of the AGBLA." Id. at ¶ 87.

9

Case No. 5:10-cv-05860 EJD (HRL)
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS; DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY ACTION (EJDLC1)

order directing that such arbitration proceed in the manner provided for in such agreement.'" Lifescan, Inc. v. Premier Diabetic Servs., Inc., 363 F.3d 1010, 1012 (9th Cir. 2004) (quoting 9 U.S.C. § 4). The inquiry performed is somewhat limited: the court must only determine whether an arbitration agreement exists and whether it encompasses the dispute at issue. See id. at 1012; see also Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000). Ordinary state law principles of contract construction apply when interpreting an arbitration provision. See First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24-25 (1983). Arbitration should only be denied if "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." AT&T Techs., Inc. v. Commc'n Workers, 475 U.S. 643, 650 (1986) (quoting United Steelworkers v. Warrior Gulf Navigation Corp., 363 U.S. 574, 582-83 (1960)).

**B. Discussion**

SPX requests an order compelling arbitration to the extent Lansmont seeks damages for its first claim for breach of contract.[5]

The AGBLA contains the following provision:

> [A]ny dispute, controversy or claim arising out of or in connection with or relating to this Agreement or the transactions contemplated hereby, including but not limited to any breach or alleged breach hereof, shall be determined and settled by arbitration . . . . It is expressly agreed by the parties that in the event of a default of this Agreement . . . the non-breaching party shall be entitled to pursue its remedy of specific performance . . . prior to the resolution of any dispute pursuant to arbitration. Complaint at Ex. A, ¶ 17.9.

---

[5] SPX also sought to compel arbitration of Claims II and III for breach of implied convenants and unjust enrichment, respectively. In light of the court's ruling on the companion motion to dismiss, SPX's request to compel arbitration as to those claims is moot at this time.

10

Case No. 5:10-cv-05860 EJD (HRL)
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS; DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY ACTION (EJDLC1)

Neither Lansmont nor SPX dispute that this portion of the AGBLA constitutes a valid agreement to arbitrate certain claims, particularly those for damages stemming from breach of the agreement. In its opposition papers, Lansmont contends it is not currently seeking damages from SPX, only an order for specific performance in the form of an accounting. Pl.'s Opp'n 6, Apr. 8, 2011, ECF No. 33. Under those facts, SPX concedes that Lansmont's breach of contract claim is properly before this court since demands for specific performance are explicitly excluded from arbitration in the AGBLA. Based on the apparent agreement that Lansmont's current demand falls outside the arbitration clause, the motion to compel arbitration is denied at this time but may need to be revisited should Lansmont amend the pleadings or modify its position as to damages. That result requires the court to also deny SPX's request for a statutory stay of this action pursuant to 9 U.S.C. § 3.

In addition, the court declines SPX's request for a discretionary stay as imposing such an order would circumvent the express terms of the AGBLA.

## IV. ORDER

Based on the foregoing:

1. SPX's Motion to Dismiss is GRANTED IN PART and DENIED IN PART. The motion is denied as to Count I. As to Counts II and III, the motion is granted with leave to amend. Any amended complaint must be filed within thirty (30) days of the date of this order.

2. SPX's Motion to Compel Arbitration and to Stay this Action is DENIED.

IT IS SO ORDERED.

Dated: June 20, 2011

EDWARD J. DAVILA
United States District Judge

11

Case No. 5:10-cv-05860 EJD (HRL)
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS; DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY ACTION (EJDLC1)

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Philip F. Atkins-Pattenson patkinspattenson@smrh.com
Nathaniel Bruno nbruno@sheppardmullin.com
Courtney Jessica Chai cchai@sidley.com
William James Newsom wnewsom@pswplaw.com
Rollin Andrew Ransom rransom@sidley.com
Bruce Lee Simon bsimon@pswplaw.com

**Dated: June 20, 2011**                         **Richard W. Wieking, Clerk**

                                                 **By:   /s/ EJD Chambers**
                                                       **Elizabeth Garcia**
                                                       **Courtroom Deputy**

12

Case No. 5:10-cv-05860 EJD (HRL)
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS; DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY ACTION  (EJDLC1)