United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

LANSMONT CORPORATION,

Plaintiff(s),

v.

SPX CORPORATION, et. al.

Defendant(s).
_________________________________/

CASE NO. 5:10-cv-05860 EJD

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

[Docket Item No(s). 92, 100]

Presently before the court are cross-motions for summary judgment filed by Plaintiff Lansmont Corporation ("Lansmont") and Defendant SPX Corporation ("SPX"). See Docket Item Nos. 92, 100. Federal jurisdiction in this case arises pursuant to 28 U.S.C. § 1332. See Compl., Docket Item No. 1, at ¶ 13. Having carefully considered the moving, opposing and reply papers for both motions as well as the arguments of counsel from the hearing on these matters, the court has determined that Lansmont's motion should be granted and SPX's motion should be denied for reasons described below.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The basic facts are not in dispute. In the late 1990's, Lansmont and non-party Dactron, Inc. ("Dactron") partnered to develop new, state-of-the-art vibration controller technology and accompanying software (the "technology"). Lansmont eventually purchased 80% of Dactron and invested the capital necessary to finalize development of the technology.

United States District Court
For the Northern District of California

In late 2001, Dactron was sold to United Dominion Industries, Inc. ("UDI"). As a condition precedent to this sale, Lansmont agreed to transfer not only Dactron's assets and its royalty-free license to UDI, but to also transfer the technology. In return, UDI promised to grant-back to Lansmont a license to the technology, as well as other business guarantees. The terms of this agreement were set forth in an Assignment and Grant-Back License Agreement (the "AGBLA") such that : (1) UDI and its successors would supply Lansmont with vibration controller hardware and software at a reduced price, (2) Lansmont would have the sole and exclusive distributorship in the electro-dynamic vibration controller market, (3) Lansmont could inspect the records of UDI and its successors upon 48 hours notice to ensure compliance with the contract, and (4) UDI and its successors would provide Lansmont with all the relevant technological documentation necessary to maintain a current interface.[1]

Soon after signing the AGBLA, SPX acquired UDI. As UDI's successor, SPX accepted the terms and conditions of the AGBLA and took advantage of its benefits. SPX operated the Dactron business through its subsidiary, Ling Dynamic Systems ("LDS").

On or about January 2, 2002, Lansmont agreed to enter into an amendment of the AGBLA with LDS (as SPX's representative) for a three-year term. The amendment granted LDS the right to sell vibration control platforms subject to the AGBLA directly to end users and certain original equipment manufacturers. Essentially, the amendment provided a carve-out to the market exclusivity clause in the AGBLA. In exchange, Lansmont was to receive a substantial royalty fee and an increased discount on its orders from LDS. To ensure compliance with the terms of the amendment, LDS was also required to provide quarterly sales and revenue updates to Lansmont.

---

[1] Key here is section 17.2 of the AGBLA:

> The parties shall have the right to enter each other's premises during business hours on forty-eight (48) hours written notice for the purpose of examining each other's relevant books and records or to have such books and records examined by its certified public accountant to verify the parties' fulfillment of their obligations under this Agreement. All information obtained during such audit shall be treated as "Confidential Information" in accordance with Section 11.

See Decl. of Joseph Driscoll, Docket Item No. 92-2, at Ex. 2.

Lansmont and SPX continued to operate under the terms of the AGBLA as amended until they expired in 2005. Thereafter, the parties returned to operating under the original terms of the AGBLA.

At some point in 2008, SPX sold LDS to Brüel & Kjaer ("B&K"), a subsidiary of Defendant Spectris, PLC ("Spectris"). After inquiry from SPX, it was determined that Spectris owed approximately $80,000 to Lansmont under the AGBLA for activities that occurred prior to the sale to Spectris. SPX informed Lansmont that LDS would pay the amount directly to Lansmont, but disclaimed any further liability under the AGBLA.

Lansmont continued in its efforts to determine whether it was owed additional payments under the AGBLA. On April 27, 2009, LDS, operating under the auspices of B&K, provided Lansmont with a limited amount of additional financial and sales data. From this limited disclosure and its own independent investigation, Lansmont determined that LDS owed it more than $328,000. Of this amount, Lansmont claims that approximately $287,000 was incurred before Spectris purchased LDS from SPX. After learning there was an estimated $41,000 in overcharges post-dating Spectris' acquisition of LDS, B&K promptly paid Lansmont $41,000. Lansmont also attempted to obtain an inspection of SPX's records as provided in the AGBLA and has alleged that SPX denied the request.

Whether Lansmont is entitled to an inspection of SPX's records according to the relevant provision of the AGBLA is now the only remaining subject of this action filed December 23, 2010.

## II. LEGAL STANDARD

A motion for summary judgment should be granted if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000). The moving party bears the initial burden of informing the court of the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets this initial burden, the burden then shifts to the non-moving party

United States District Court
For the Northern District of California

to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); Celotex, 477 U.S. at 324. The court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material. Celotex, 477 U.S. at 324. However, the mere suggestion that facts are in controversy, as well as conclusory or speculative testimony in affidavits and moving papers, is not sufficient to defeat summary judgment. See Thornhill Publ'g Co. v. GTE Corp., 594 F.2d 730, 738 (9th Cir. 1979). Instead, the non-moving party must come forward with admissible evidence to satisfy the burden. Fed. R. Civ. P. 56(c); see also Hal Roach Studios, Inc. v. Feiner & Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1990).

A genuine issue for trial exists if the non-moving party presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986); Barlow v. Ground, 943 F.2d 1132, 1134-36 (9th Cir. 1991). Conversely, summary judgment must be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

## III. DISCUSSION

Lansmont moves for summary judgment on the sole remaining cause of action for breach of contract. In particular, Lansmont seeks an order for specific performance requiring SPX to allow an inspection pursuant to Section 17.2 of the AGBLA. For its part, SPX opposes Lansmont's motion but also moves for summary judgment in its favor should the court find that Lansmont cannot meet its burden to show breach of contract or entitlement to specific performance.

These motions primarily turn on whether Lansmont has proven the elements of its breach of contract claim. The parties agree that the AGBLA is governed by California law. In California, a claim for breach of contract requires: "(1) existence of the contract; (2) plaintiff's performance or excuse of nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." CDF Firefighters v. Maldonado, 158 Cal. App. 4th 1226, 1239 (2008).

Two of these elements need little discussion. As to the first element requiring the existence

United States District Court
For the Northern District of California

of a contract, SPX concedes in its opposition to this motion that the AGBLA is an existing, valid contract. With regard to fourth element requiring Lansmont to prove its damages, the parties are in agreement that the AGBLA allows the non-breaching party with a right to seek the remedy of specific performance and precludes the breaching party from raising a lack of irreparable harm as a defense.[2] Thus, there is no question that specific performance is the proper remedy should Lansmont prevail.

The second and third elements of a breach of contract claim, however, are subject to debate here. In order to meet their burden, Lansmont must demonstrate there is no dispute of material fact as to: (1) whether it performed its obligations according to Section 17.2 of the AGBLA and (2) whether SPX breached its duties to allow an inspection. These two elements are discussed below.

**A. Whether Lansmont Performed**

Section 17.2 requires the party requesting an inspection to provide "written notice" at least 48 hours in advance of its intent to conduct a review. In arguing that it complied with its obligations under this provision, Lansmont contends it "made multiple inspection demands pursuant to its rights." Specifically, Lansmont cites to sixteen emails between its directors - Chief Executive Officer Joe Driscoll ("Driscoll") and Chief Financial Officer Patti Monahan - and various individuals from SPX, LDS and B&K in support of its claim that it requested an inspection "no less than 15 times between October 2008 and April 2010."

For its part, SPX argues that only one of the e-mails cited by Lansmont constitutes a proper request under section 17.2 because the other e-mails are either not specific enough to invoke the inspection rights or were not directed to SPX as the proper recipient.

---

[2] Section 7.1 of the AGBLA states, in pertinent part:

> If any party should default in its obligations under this Agreement, each party agrees that the non-defaulting party or parties . . . may sue in equity for specific performance, and the parties each expressly waive the defense that a remedy in damages will be adequate. The parties agree that a breach of this Agreement shall entitle the injured party to injunctive relief without bond or other security, which may include but shall not be limited to immediate restraining order.

See Driscoll Decl., at Ex. 2.

"A bedrock principle of California contract law is that '[h]e who seeks to enforce a contract must show that he has complied with the conditions and agreements of the contract on his part to be performed.'" Brown v. Dillard's, Inc., 430 F.3d 1004, 1006 (9th Cir. 2005) (quoting Pry Corp. of Am. v. Leach, 177 Cal. App. 2d 632 (1960)). "A condition precedent is an act which must be performed or an uncertain event which must happen before the promisor's duty of performance arises." Sosin v. Richardson, 210 Cal. App. 2d 258, 264 (1963).

As indicated above, the terms of section 17.2 contain a condition precedent insomuch as the party seeking an inspection must make a request before the responding party is obligated to allow the inspection. Here, the evidence demonstrates that Lansmont met its obligation to perform under the AGBLA and satisfied the condition precedent to SPX's performance, particularly since the parties agree that the e-mail dated March 22, 2010, between Driscoll and Robert Spence ("Spence") from SPX constitutes a sufficient request according to the operative terms. See Driscoll Decl., at Ex. 46. Indeed, Driscoll's e-mail references section 17.2 and requests a review according to that provision. Thus, the court concurs that the March 22nd e-mail constitutes performance by Lansmont.[3]

Based on the one compliant e-mail, the court finds there is no genuine factual dispute as to the second element of a cause of action for breach of contract. This issue is determined in favor of Lansmont.

**B. Whether SPX Breached**

For this element, Lansmont argues that SPX breached the AGBLA by refusing to allow an inspection after it received a sufficient request under section 17.2. The court begins by examining whether Lansmont has met its initial burden to show the alleged breach. In the most basic sense, "[a] breach of contract ordinarily occurs upon the promisor's failure to render the promised performance." McCaskey v. Cal. State Auto. Assn., 189 Cal. App. 4th 947, 958 (2010). As

[3] The court does note, however, that the March 22nd e-mail is the only one which adequately demonstrates Lansmont's performance according to the terms of 17.2. In that regard, the court agrees with SPX that the other e-mails relied upon by Lansmont are deficient and did not satisfy the condition on which SPX's performance is conditioned.

United States District Court
For the Northern District of California

Case5:10-cv-05860-EJD Document109 Filed12/07/12 Page7 of 10

United States District Court
For the Northern District of California

referenced above, section 17.2 required SPX to undertake a particular performance once it received Lansmont's compliant inspection request. Per the plain language of the AGBLA, Lansmont had the "right to enter [SPX's] premises" in order to examine "relevant books and records." Here, it is undisputed that SPX did not allow an inspection of *its own records* on *its own premises* after the March 22nd e-mail, regardless of its reasons for not doing so. As such, Lansmont has made a basic showing that SPX breached section 17.2 once it satisfied the condition precedent to SPX's performance.

But that does not end the matter because the court must address SPX's arguments in opposition to determine whether it has demonstrated a disputed material fact. SPX first contends that no breach occurred because it was not in possession of any documents responsive to Lansmont's inspection request. Thus, according to SPX, it could not allow an inspection of "relevant books and records" at its facility because those records were transferred to Spectris and B&K along with LDS.

This argument fails, however, because the same evidence that SPX relies on to support its non-breach claim also establishes that SPX was in possession of responsive documents. Indeed, SPX's designated witness under Federal Rule of Civil Procedure 30(b)(6), Kelley A. Clement ("Clement"), initially testified that the responsive records were not with SPX, but then later revealed during the same deposition that certain cost data relevant to Lansmont's inspection request was stored at SPX. See Dep. of Kelly A. Clement, Docket Item Nos. 92-1, 100, at 24:20-25:8; 96:2-99:7. To the extent Clement's deposition testimony is internally inconsistent, it does not itself create a dispute of material fact because the former statement is rejected as self-serving, vague and contrary to the remaining evidence. Kennedy v. Applause, Inc., 90 F.3d 1477, 1481 (9th Cir. 1996) (affirming district court's decision to discount uncorroborated, contradictory and self-serving deposition testimony when ruling on motion for summary judgment). Indeed, when Clement's more specific testimony about the costs data retained at SPX is coupled with the other relevant evidence, including Spence's e-mail to Driscoll dated January 15, 2010, as well as Spence's deposition testimony, it is apparent that SPX is in possession of at least some relevant documents in some form. See Driscoll Decl., at Ex. 42; see also Dep. of Robert M. Spence, Docket Item No. 92-1, at 117:19-

7

CASE NO. 5:10-cv-05860 EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

119:18. If it was not, Spence could not have offered the statement about cost data contained in the January 15th email. See Driscoll Decl., at Ex. 42 ("SPX's fundamental position with regard to the claim is that our hard data in hand from 2001 . . . .").[4]

SPX also contends, presumably as an alternative to the "no records" argument, that it actually complied with Lansmont's inspection request by facilitating access to LDS documents through Spectris. This argument is no longer a viable one, however, considering the determination that SPX was in possession of relevant documents that could have been inspected at its facility according to section 17.2. In any event, the court would still find that SPX's apparent alternative performance did not constitute compliance with its obligation under the AGBLA even if it did not have responsive documents. This is because the AGBLA does not allow for that. "[W]here a contract has been reduced to writing, the instrument measures the rights, duties and obligations of the parties." Jones v. Pollock, 34 Cal. 2d 863, 866 (1950). Since the contract at issue is clear as to what it requires, "it is not the province of a court to make a new one, or to re-write or alter by construction what has been agreed upon." Barker v. Sherman, 123 Cal. App. 2d 810, 812 (1954). By citing to some conduct which differs than what was required by the AGBLA and requesting the court accept it as full performance, SPX is requesting the court do just that.

The court finds that Lansmont has met its burden to show breach of the AGBLA by SPX. That being the case, Lansmont is entitled to summary judgment on it cause of action for breach of contract.

**C. Specific Performance and Injunctive Relief**

---

[4] The court disagrees with SPX insofar as it believes that any inspection undertaken pursuant to section 17.2 is somehow limited in scope by the documents referenced in Driscoll's March 22nd e-mail. The language of Section 17.2 does not provide for such a limitation or require the requesting party to define the bounds of the inspection in that manner; it allows for the parties to inspect "relevant books and records . . . to verify the parties' fulfillment of their obligations under this Agreement." The term "relevant," which is the only word which could possibly impose some limitation, was not specially defined in the AGBLA and therefore must be interpreted in its "ordinary and popular sense." Crawford v. Weather Shield Mfg., Inc., 44 Cal. 4th 541, 552 (2008). As defined in the dictionary, the word "relevant" means "having significant and demonstrable bearing on the matter at hand." Merriam Webster's Collegiate Dictionary (11th ed. 2003). This broad definition certainly encompasses the 2001 documents referenced by Clement in his deposition and Spence in his January 15th email.

Pursuant to the AGBLA, Lansmont seeks specific performance and an injunction as a remedy for SPX's breach. Lansmont is entitled to this relief.

"[S]pecific performance is a remedy for breach of contract, a cause of action which requires proof the contract was breached." Golden West Baseball Co. v. City of Anaheim, 25 Cal. App. 4th 11, 49 (1994). "To obtain specific performance after a breach of contract, a plaintiff must generally show: '(1) the inadequacy of his legal remedy; (2) an underlying contract that is both reasonable and supported by adequate consideration; (3) the existence of a mutuality of remedies; (4) contractual terms which are sufficiently definite to enable the court to know what it is to enforce; and (5) a substantial similarity of the requested performance to that promised in the contract.'" Real Estate Analytics, LLC v. Vallas, 160 Cal. App. 4th 463, 472 (2008) (quoting Tamarind Lithography Workshop, Inc. v. Sanders, 143 Cal. App. 3d 571, 575 (1983)).

"According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 392 (2006).

Much of Lansmont's burden to obtain specific performance and an injunction is satisfied either by the parties' agreement or by findings already made in this order. On the elements of specific performance, that the AGBLA is a valid contract is not in dispute. Section 7.1 provides that the non-breaching party may sue for specific performance and the parties expressly waived the defense that a remedy in damages will be adequate. Mutuality of remedies is satisfied based on the plain terms of the contract and the specificity of contract terms is not at issue. Moreover, the performance sought by Lansmont is nothing more than what the terms of the AGBLA provide.[5]

---

[5] SPX has argued that specific performance cannot be ordered here since it does not have responsive documents. While it is true that "[a]n agreement to perform an act which the party has not power lawfully to perform when required to do so" cannot be specifically enforced (Cal. Civ.

As far as an injunction goes, section 7.1 entitles the non-breaching party to injunctive relief and SPX concedes that this provisions includes a waiver of any argument it may have against the presence of irreparable harm. And in light of Lansmont's entitlement to summary judgment on the breach of contract, the injunction is appropriate.

In short, Lansmont has demonstrated through its motion that a judgment of specific performance and the issuance of an injunction should issue.

## IV. ORDER

Based on the foregoing, Lansmont's Motion for Summary Judgment (Docket Item No. 92) is GRANTED. SPX's Motion for Summary Judgment (Docket Item No. 100) is DENIED. Since this determination essentially resolves all remaining issues in this case, a judgment in favor of Lansmont which details the provisions of the injunction shall issue from the court in short order. The pretrial conference scheduled for December 10, 2012, and the ensuing trial dates are VACATED.

**IT IS SO ORDERED.**

Dated: December 7, 2012



EDWARD J. DAVILA
United States District Judge

---

Code § 3390), it is also true that the inability must exist when performance is required by the court rather than at the time the contract is made. See Stevens Group Fund IV v. Sobrato Dev. Co., 1 Cal. App. 4th 886, 894 (1991). Also, inability to perform must be complete. See Milkes v. Smith, 91 Cal. App. 2d 79, 81-82 (1949). If performance is at all possible, the court may order partial performance. Id. Since the court has determined SPX to be in possession of some documents upon which an inspection can occur, this argument fails.